**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or

Transaction:_____Philadelphia_____

---

***RELATED CASE IF ANY:*** Case Number:___21-cv-04005_____ Judge:_____Karen Spencer Marston_____

1. Does this case involve property included in an earlier numbered suit? Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit? Yes ☒

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit? Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual? Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation. Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☒ **is** / ☐ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

**A.** *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Wage and Hour Class Action/Collective Action
☐ 6. Patent
☐ 7. Copyright/Trademark
☐ 8. X Employment
☐ 9. Labor-Management Relations
☐ 10. X Civil Rights
☐ 11. Habeas Corpus
☐ 12. Securities Cases
☐ 13. Social Security Review Cases
☐ 14. Qui Tam Cases
☐ 15. Cases Seeking Systemic Relief **\*see certification below\***
☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

**B.** *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify)*:_____
☐ 7. Products Liability
☐ 8. All Other Diversity Cases: *(Please specify)*_____
_____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒**does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Jon Randolph

**(b)** County of Residence of First Listed Plaintiff  Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Olugbenga Abiona, 215-833-8227; 121 South Broad Street, Suite 1200, Philadelphia, PA 19107

## DEFENDANTS

SEPTA, and Lt. Andrew LAchowitz

County of Residence of First Listed Defendant  Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                      *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) ☐ 863 DIWC/DIWW (405(g)) ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other ☐ 550 Civil Rights ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from Another District *(specify)*

☐ 6 Multidistrict Litigation - Transfer

☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title VII of the Civil Rights Act; Section 1981/ 1983 of the Civil Rights Act.

Brief description of cause:
Retaliatory actions subsequent to protected activities

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE  Karen Spencer Marston    DOCKET NUMBER  21-cv-04005

DATE

May 25, 2026

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT #_____ AMOUNT_____ APPLYING IFP_____ JUDGE_____ MAG. JUDGE_____

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---------------------------------

| | |
|---|---|
| | : CIVIL ACTION No. |
| JON L. RANDOLPH | : |
| Plaintiff, | : |
| vs. | : |
| | : |
| SEPTA | : |
| LT. ANDREW LACHOWITZ | : |
| Defendants | : |

**COMPLAINT AND JURY DEMAND**

### I.    INTRODUCTION

1.    Plaintiff in the above captioned matter, claims a sum in excess of One Hundred Thousand Dollars ($100,000.00) in damages and upon his causes of action, avers as follows:

2.    This action for monetary damages and other appropriate relief is brought by Plaintiff to redress violations by Defendants Southeastern Pennsylvania Transportation Authority (hereinafter "SEPTA"), and Lt. Andrew Lachowitz, rights secured to Plaintiff by the laws of the United States of America and the Commonwealth of Pennsylvania.

3.    This action arises under Title VII of the Civil Rights Act 42 U.S.C. 2000e-5, et seq., and the Civil Rights Act 42 U.S.C. §1981, which prohibit discrimination on the bases of race, and retaliation by employers and any person because of

1

complaints of race discrimination, and is brought by Plaintiff to redress arbitrary, malicious, reckless, improper, unlawful, willful, and deliberate discrimination and retaliation by Defendants.

4. This action also arises under the PHRA which prohibits discrimination on the bases of race, and retaliation by employers and any person because of complaints of race discrimination, and is brought by Plaintiff to redress arbitrary, malicious, reckless, improper, unlawful, willful and deliberate discrimination and retaliation by Defendants. Plaintiff has exhausted his administrative remedies under PHRA as it has been over one year since he dual filed his administrative complaints with the EEOC and PHRC.

5. This action also arises under the Civil Rights Act 42 U.S.C. Section 1983 for the violation of Plaintiff's Constitutional and federal law rights by Defendants, acting under color of state law.

6. On or about April 8, 2025, dual filed his EEOC Charge of Discrimination against SEPTA under Title VII and the PHRA. On May 5, 2026, the EEOC issued Plaintiff a right to sue notice permitting Plaintiff to take his Title VII claims against SEPTA to Court. A copy is attached hereto.

## II.    <u>JURISDICTION, VENUE AND PARTIES</u>

7. The jurisdiction of this Court is invoked pursuant to Title 28 U.S.C. 1331, which provides for the original jurisdiction of Plaintiff's claims arising under the

laws of the United States of America.  This Court also has supplemental jurisdiction over Plaintiff's state law claims.

8.      The venue of this Court is proper pursuant to the dictates of Title 28 U.S.C. 1391(c).

9.      Plaintiff, Jon L. Randolph, is an adult individual, residing at 6522 Cresentville Road 1, Philadelphia, PA, and belongs to the protected classes under the applicable statute in this case.  Plaintiff is a black African American by race.

10.     Defendant, SEPTA, is a municipal agency, with its offices located at 1234 Market Street, Philadelphia, PA 19107.

11.     Defendant Lt. Andrew Lacowitz, Caucasian, (hereinafter "Lachowitz") is a citizen of the United States and upon information and belief currently resides within the Commonwealth of Pennsylvania.  At all times material to the claims asserted by Plaintiff in this civil action, Lachowitz was Plaintiff's supervisor.

12.     At all times material to this action, Lachowitz was a SEPTA police officer, was acting under color of state law, and is being sued in his individual capacity.

## III.    <u>BRIEF STATEMENT OF FACTS</u>

13.     Plaintiff was hired by SEPTA in or about September 2016 as a Recruit Officer and then assigned as a Patrol Officer.

14.     On September 8, 2021, Plaintiff filed a Civil Action in the United States District Court, Eastern District of Pennsylvania, against SEPTA, Police Chief

Thomas Nestel, and Police Officer Bryan McCauley, for racial harassment and hostile work environment, religious harassment and hostile work environment and retaliation. See, Civil Action No. 21-cv-04005, hereinafter referred to as "Underlying Action".

15.    In the Underlying Action, Plaintiff alleged that around January 2019, Plaintiff's unit was told by then Chief of Police (Thomas Nestel, Caucasian) that Bryan McCauley (Caucasian) was the Team Lead of the Special Investigations Unit, and they were to report to Nestel and McCauley.

16.    Plaintiff also alleged in the Underlying Action that while under the supervision of Nestel and McCauley, McCauley subjected him to harassment and hostile work environment based on Plaintiff's race (African American) and religion (Muslim), when  McCauley would use the word "nigger" and would make a variety of derogatory remarks about different minorities and religions.

17.    Plaintiff alleged that on or about April 15, 2019, McCauley taped a printed copy of a social media post on the wall in front of his desk; the social media post by McCauley had the word "nigger" in it multiple times; that McCauley requested that Plaintiff and his other co-worker should read the post out loud. But when they both refused, McCauley proceeded to read the post out loud; repeatedly saying the word "nigger".  McCauley held the paper in his hands and flashed it and did a

4

dance song with the post, reading out the racist statements in the post. McCauley then said, "This is our squad's mission statement."

18.    In the Underlying Action, Plaintiff also alleged that on or about September 15, 2019, McCauley drew his gun and pointed it at Plaintiff while talking about the Glock in his hand.

19.    Also, the United States Department of Justice brought a civil action against SEPTA for subjecting Plaintiff and other officers to racially motivated hostile work environment resulting in a Consent Decree ordered by the Court.   *See, USA v. SEPTA*, Civil Action No. 2:22-cv-03004-KSM. A copy of which is attached hereto as Exhibit 1.

20.    In the Consent Decree, the Court Ordered SEPTA not to engage in any act or practice that would constitute retaliation. See Exhibit 1. However, Plaintiff has been subjected to retaliatory actions by Defendants since 2022 in violation of Title VII, Section 1981 and the Consent Decree.

21.    In or about 2022, Plaintiff was assigned to District 7 as a patrol officer, under the supervision of Sgt. Lachowitz and Capt. Walls.

22.    When Plaintiff first got to District 7, Sgt Lachowitz and Sgt. Lafferty pulled Plaintiff into the office and **asked him about the incidents involving McCauley and Plaintiff's lawsuit against SEPTA and Chief Neste**l. Sgt. Lachowitz's approach towards Plaintiff was intimidating.

23.    Plaintiff told Sgt. Lachowitz that he was in the middle of the lawsuit and could not discuss it with him.

24.    During Plaintiff's Underlying Action, Chief Nestel's employment with SEPTA was terminated, and Sgt. Lachowitz was promoted to the rank of Lieutenant for District 7.

25.    Since Plaintiff was reassigned to District 7, he has been subjected to retaliatory harassment, retaliatory hostile work environment and other retaliatory actions by Lt. Lachowitz and other supervisory officials in SEPTA's Police Department.

26.    Plaintiff would seek vacation time and time off and would be denied or his request ignored for months by Lt. Lachowitz, while Lachowicz would grant the requests from other officers under his command.

27.    Plaintiff was preapproved for vacation time for February 9, 2025, but was later rescinded by Lt. Lachowitz.

28.    Plaintiff was preapproved for intermittent FMLA from September 10, 2024, to March 9, 2025, and when he decided to use his approved FMLA leave for his February 9, 2025, absence, SEPTA retaliated and removed Plaintiff from a preferred assignment.

29.    On July 18, 2023, Lt. Lachowitz circulated a text message to Plaintiff and the officers in District 7 stating in a sarcastic and intimidating manner, "Nestel was

found guilty and **Jon claimed the 15th and Hunting Park throne**". See Exhibit 2 attached.

30.     Every time Plaintiff had any issue to deal with, Lt. Lachowitz would harass Plaintiff and say the incident was caused by the "Ghost of Nestel", referring to Plaintiff's racial harassment civil action against Chief Nestel.

31.     Lachowitz would send Plaintiff harassing text messages, "The ghost of Nestel past rides shotgun"; "On your way to Nestel's house for Thanksgiving leftovers?"; In January 2024, when Plaintiff had a problem with his car, Lachowitz texted, "That's the ghost of Nestel"; when Plaintiff had a flat tire in February 2024, Lachowitz texted Plaintiff, "You can't catch a break with that Tommy Nestel car"; Attached as Exhibit 2 are some screen shots of text messages to Plaintiff by Lt. Lachowitz harassing Plaintiff about his lawsuit against Chief Nestel.

32.     On September 22, 2024, Lt. Lachowitz issued Plaintiff an unwarranted write up, despite Capt. Sanders stating that Plaintiff should not be issued any write up for a September 16, 2024, incident at a car wash where no damage to property occurred.

33.     On Thanksgiving 2024, Lt. Lachowitz sent a group text message to District 7 officers that Plaintiff was on his way to Nestel's house for Thanksgiving. See Exhibit 2.

34.    On December 31, 2024, after Plaintiff finished his shift for the day, Lt. Lachowitz requested that Plaintiff should work overtime and assist Lt. Lachowitz with a function Lt. Lachowitz was attending at 69th Street headquarters.

35.    Plaintiff accepted the overtime assignment and followed Lt. Lachowitz to the 69th Street headquarters.

36.    After they returned to District 7 headquarters, Plaintiff asked Lt. Lachowitz to sign his overtime papers, but Lt. Lachowitz refused, resulting in Plaintiff being denied 2 hours of overtime income he earned when he worked supporting Lt. Lachowitz on December 31, 2024.

37.    On January 2, 2025, Plaintiff had ongoing issues with his work assigned cellphone because of a defective battery Plaintiff could not keep charged. Plaintiff informed his supervisors, Sgt. Lafferty and Lt. Lachowitz about the problem he was having with his cell phone.

38.    Sgt. Melissa McKenna took Plaintiff's cellphone to be repaired by Sgt. Ramos.  Sgt Ramos returned the phone and said Plaintiff was "a liar".

39.    On January 5, 2025, Plaintiff filed a formal complaint against Sgt. Ramos with Capt. Pasquarella, for the false allegation that Plaintiff was lying about the cellphone.

40.    Capt. Pasquarella was involved in the investigation of Plaintiff's 2019 complaint against McCauley and Plaintiff's 2021 civil action proceedings.

8

41.    On January 15, 2025, Capt. Pasquarella and Lt. Lachowitz told Plaintiff that they would not process Plaintiff's complaint, and that Plaintiff could only proceed with his complaint against Sgt. Ramos if Sgt. McKenna filed the complaint and bring Plaintiff in as a witness.

42.    Plaintiff was on SEPTA's Police Department Honor Guard.

43.    On March 12, 2025, at a memorial service for late Sgt. Sewell, Plaintiff found out that he was removed from the Honor Guard by Capt. Sanders and Deputy Chief Zuggi because Plaintiff had used his FMLA on February 9, 2025.

44.    On April 10, 2025, Plaintiff dual filed a charge of retaliation under Title VII and the PHRA against Defendants and SEPTA was immediately notified of Plaintiff's charge.

45.    On April 14, 2025 at about 9:32 a.m. Plaintiff received a radio call to 33rd and Dauphin for a female refusing to get off the bus at the end of the line. Plaintiff responded to the call since everyone else was on foot and trains. Lt Lachowitz was the only other person who would have access to another vehicle on the north end, and it was normal for a supervisor to direct Plaintiff to pick up a foot beat officer and take that person as back up or Lt. Lachowitz would show up himself in a car to back up the officer. However, Defendants made Plaintiff go to this assignment without any back up and the person in question was known to be a person who SEPTA Police Department have had issues with previously on buses and trains and

at times she would get hostile, and she had to be physically assisted off SEPTA vehicles.

46.    On April 14, 2025, Plaintiff contacted  his primary doctor in reference to neck stiffness, soreness and pain due to stress and lack of sleep due to work related anxiety.

47.    On April 15, 2025, Plaintiff woke up and his neck pain radiated to his left shoulder and left back and triggered his migraines. Plaintiff wanted to call out on FMLA but was in fear of retaliation .

48.    On April 16, 2025, while on duty, Plaintiff barely could drive the patrol vehicle without pain, and limited movement. The doctor responded on April 16, 2025,  and said he would send a prescription over for Plaintiff to get lidocaine patches.

49.    On April 16, 2025, when Plaintiff got to work, Sgt. Lafferty was on the schedule. He never showed up at 5 a.m. as was listed on the schedule, then a revised sheet was put out when Lt. Lachowitz allowed Sgt. Lafferty to take a personal day. Also, Officer Thomas Gallo was allowed to take a comp day off on the same day with no issue. Yet, Plaintiff was still waiting on days off approvals for June and November that Plaintiff put in months prior.

50.    Plaintiff called out on FMLA for April 16, 2025 due to his pain from stress triggering his chronic migraines. This would cause Plaintiff to lose 2 hours overtime which he gets every morning (5a-7a).

51.    On April 18, 2025, Plaintiff went to Jefferson Urgent Care on Grant Avenue and saw Dr Friedman, in reference to his pain. Dr. Friedman opined that Plaintiff's neck pain could very well be from increased stress at work, ordered an X-Ray, and prescribed Tizanidine 4mg and Naproxen 500mg.

52.    On April 20, 2025, Plaintiff walked into work and saw the schedule and both Thomas Gallo and Edward Kisselback were given off for personal day.

53.    On April 22, 2025, Plaintiff was told by Sgt. Lafferty to download his BWC per Inspector Daryl Jones. Supposedly, Plaintiff had a civilian complaint against him. It was in reference to an incident that morning between 5:55 a.m. and 6:25 a.m., at Fairmount station, and it was alleged that two males were involved with a disturbance with the cashier and a firearm was displayed: Plaintiff was able to stop them at 13th and Girard. One fled, and one Plaintiff got positive info on and released him, no firearm recovered, and the cashier wasn't willing to pursue the case and make a statement. Furthermore, it was revealed the cashier lied about the incident and she was the one who started the incident and that's why she didn't want to further pursue it. Defendants were targeting Plaintiff in retaliation for his April 10, 2025 EEOC charge.

54.    On June 19, 2025, Juneteenth holiday, Plaintiff was subjected to racial and retaliatory harassment by Lt. Lachowitz and P/O Edward Kisselback, when around 9:50-9:54 a.m., Plaintiff was completing a vehicle transportation of a prisoner with P/O Kisselback.  Officer Kisselback made a phone call to Lt. Lachowitz and placed the call on speaker phone. One of the first things Officer Kisselback (Caucasian) stated, in a sarcastic manner to Lt. Lachowitz (Caucasian) was "Happy Juneteenth".  Both Caucasian men laughed, mocking this African American holiday that signified when some blacks in the south found out about their freedom from slavery. When their conversation ended, Kisselback looked at Plaintiff and said something to the effect, "It's not a real holiday" or "It's a fake holiday". This incident was captured on Body Worn cameras of Officer Kisselback and Plaintiff's and also recorded on SEPTA's Dispatcher line.  Plaintiff immediately felt harassed and offended and started experiencing head aches and chest pain. Both Caucasian individuals showed a lack of respect and sensitivity to a Federal Holiday relating to the freedom of black slaves. This was a second harassment experience from Officer Kisselback, and continuous retaliatory and racially motivated harassment from Lt. Lachowitz. Plaintiff reported this racist and retaliatory harassment to SEPTA's Command staff and SEPTA's EEO, however, no remedial action was taken against Lt. Lachowitz and Officer Kisselback by SEPTA.

12

55.    For Friday, July 4, 2025, the department designated an "all hands-on deck" day for the holiday, requiring all personnel to report for duty—even if it was their regular day off. In Plaintiff's squad, there were three patrol officers who normally had Fridays off: Plaintiff, Anthony Lathrop, and Rashad Brown. But on July 2, 2025, Plaintiff received the holiday deployment plan, and Plaintiff was the only one among the three officers to have his shift adjusted. Their standard schedule was from 7:00 a.m. to 3:00 p.m., with the option to start at 5:00 a.m. for overtime—a shift Plaintiff consistently worked on for years. However, for the 4th of July, Defendants moved Plaintiff's assigned shift from 9:00 a.m. to 5:00 p.m., **with no option to begin earlier as usual**, constructively denying Plaintiff his overtime for that day.

56.    During the week of July 7, 2025, Plaintiff was participating in his yearly mandatory in-service training, which concluded  on Friday, July 11, 2025, with firearms qualification at the shooting range on Friday. These training weeks are designated for specific individuals each week, and participation was required to maintain qualifications. On July 11, 2025, Officer Edward Kisselback, who was *not* designated or assigned to that training week, was offered the option to voluntarily attend the range and shoot. For those scheduled, qualification was mandatory; however, this voluntary opportunity was extended to Officer Kisselback despite not being part of the assigned group. In Plaintiff 's nine years of

13

service at SEPTA, he had never been given the option to shoot on a non-mandatory or voluntary basis on a training day not scheduled for him. The individual responsible for creating the training schedule was Lieutenant Lachowitz.

57.    On February 25, 2025, Plaintiff submitted to Lt. Lachowitz his request for time off from work from November 5 2025 to November 13, 2025, using his vacation, personal days and comp time, for his planned wedding and honeymoon, but despite repeated reminders by Plaintiff, Lt. Lachowitz did not respond to Plaintiff's request. Not until Lt. Lachowitz was reassigned from his position as Plaintiff's supervisor, did Sgt. McKenna approved Plaintiff's request on September 14, 2025; seven months after Plaintiff had made the request.  Yet, Lt. Lachowitz regularly responded immediately to the time off requests of the other officers under his command.

58.    On or about January 21, 2026, Plaintiff was denied a picking for his assignment by Capt. Pasquerella, who selected two other officers with less seniority for a background investigator assignment that Plaintiff was interested in but was denied. Plaintiff filed a grievance against Pasquerella with his Union with regards to this denial of the assignment given to these two officers with less seniority than Plaintiff.

59.    On January 21, 2026, Lt. Lachowitz and Sgt. Cavallaro, now reporting to Capt. Pasquerella filed false charges against Plaintiff, accusing Plaintiff of not

submitting training paperwork of a new officer Plaintiff has previously noted was struggling.  Plaintiff had in fact submitted his evaluation of the officer before the false accusations by Lt. Lachowitz.

60.    On January 22, 2026, Plaintiff was subjected to retaliatory harassment by Lt. Duckson, who was involved in the Underlying Action.  On January 22, 2026, Lt. Duckson emailed Plaintiff and requested that Plaintiff should appear at Internal Affairs, without notifying the Union.  But after Plaintiff contacted the Union, Duckson retracted his request. Plaintiff found out from Sgt. McKenna that Duckson was trying to blame Plaintiff for leaving a police vehicle unattended. Yet, it was common practice of officers on morning shift in South Philadelphia to leave the vehicle for officers on afternoon shift in that manner.

61.    On January 23, 2026, Duckson posted a note on his door that stated, "Don't flatter yourself, you're not that important… You're a tiny blade of grass in a big big field", referring to Plaintiff.  Plaintiff found Lt. Duckson's note to be threatening, meant to intimidate Plaintiff and was retaliatory harassment.

62.    On February 18, 2026, Lt. Lachowitz again made false accusations against Plaintiff claiming Plaintiff failed to submit his paperwork relating to his training of a new officer. Yet, Plaintiff's supervisors, Lafferty and McKenna confirmed Plaintiff had submitted his paperwork up the chain of command for this new officer, and they had signed off on Plaintiff's paperwork. As a resulting of

Lachowitz ongoing harassment of Plaintiff, Plaintiff requested to be removed from his desired role as a Field Training Officer to avoid having to deal with Lachowitz, who was the supervisor of the Training Unit.

**IV          STATEMENT OF CLAIM**

**COUNT ONE- SECTION 1981 VIOLATION AND VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS VIA SECTION 1983 OF THE CIVIL RIGHTS ACT -RACE DISCRIMINATION PLAINTIFF V. LT. ANDREW LACHOWITZ**

63.    Plaintiff incorporates by reference all allegations alleged in paragraphs 1 through 62 above as if same were fully set forth at length herein.

64.    The acts and conduct of Defendant Lachowitz as stated above where he subjected Plaintiff to racially motivated harassment and hostile work environment was a violation of Section 1981.

65.    The acts and conducts of Defendant Lachowitz as stated above where he subjected Plaintiff to racial harassment and hostile work environment was a violation of Plaintiff's Constitutional rights under the Equal Protection Clause of the Fourteen Amendment by denying Plaintiff equal protection in his employment because of his race, while acting under the color of state law.

66.    These claims are asserted against Lachowitz in his individual capacity, through Section 1983 of the Civil Rights Act because he was acting under the color of state law when he engaged in these conducts and actions.

16

67.    As a direct and proximate result of the said race discriminatory practices of Defendant Lachowitz in violation of Section 1981 and Plaintiff's Constitutional rights, Plaintiff has sustained loss of wages and earnings, loss of benefits, loss of future earning power, loss of back pay, as well as mental anguish, emotional distress, humiliation, and damage to reputation.

## COUNT TWO – 42 U.S.C. §1983 VIOLATIONS – RETALIATION PLAINTIFF V. LT. LACHOWITZ

68.    Plaintiff incorporates by reference all allegations alleged in paragraphs 1 through 67 as if the same were fully set forth at length herein.

69.    The acts and conducts of Lt. Lachowitz as stated above where Plaintiff was subjected to adverse actions, including denial of overtime compensation, retaliatory write ups, and retaliatory harassment and hostile work environment by Lt. Lachowitz after Plaintiff engaged in protected activities, were violations of the Civil Rights Act, 42 U.S.C. §1981 and Plaintiff's Constitutional rights, which are being asserted against Defendant Lachowitz via Section 1983 of the Civil Rights Act.

70.    As a direct and proximate result of the said retaliatory practices of Lt. Lachowitz, Plaintiff has sustained loss of wages and earnings, loss of benefits, loss of future earning power, loss of back pay, front pay, and interest due therein as well as mental anguish, emotional distress, humiliation, and damages to reputation.

## COUNT THREE –PHRA VIOLATION
## RACE DISCRIMINATION
## PLAINTIFF V. ALL DEFENDANTS

71.    Plaintiff incorporates by reference all allegations alleged in paragraphs1 through 70 above as if same were fully set forth at length herein.

72.    The acts and conduct of Defendants as stated above from 2022 when Plaintiff was assigned to District 7 until February 18, 2026, where Plaintiff was subjected to racially motivated harassment and hostile work environment was violation of the PHRA.

73.    Defendant Lachowitz as stated above aided and abetted in the racially motivated harassment and hostile work environment of the Plaintiff.

74.    As a direct and proximate result of the said discriminatory practices of Defendants in violation of the PHRA, Plaintiff has sustained loss of wages and earnings, loss of benefits, loss of future earning power, loss of back pay, as well as mental anguish, emotional distress, humiliation, and damage to reputation.

## COUNT FOUR – PHRA VIOLATIONS – RETALIATION
## PLAINTIFF V. DEFENDANTS

75.    Plaintiff incorporates by reference all allegations alleged in paragraphs 1 through 74 above as if the same were fully set forth at length herein.

18

76.    The acts and conduct of Defendants as stated above from 2022 when Plaintiff was assigned to District 7 until February 18, 2026, where Plaintiff was subjected to adverse actions, including denial of overtime compensation, disciplinary write ups, retaliatory harassment and hostile work environment after Plaintiff engaged in protect activities were violations of the PHRA.

77.    Defendant Lachowitz aided and abetted the retaliatory actions taken against Plaintiff by SEPTA.

78.    As a direct and proximate result of the said retaliatory practices of Defendants, Plaintiff has sustained loss of wages and earnings, loss of benefits, loss of future earning power, loss of back pay, front pay, and interest due therein as well as mental anguish, emotional distress, humiliation, and damages to reputation.

## COUNT FIVE –TITLE VII VIOLATION
### RACE DISCRIMINATION
### PLAINTIFF V. SEPTA

79.    Plaintiff incorporates by reference all allegations alleged in paragraphs 1 through 78 above as if same were fully set forth at length herein.

80.    The acts and conduct of Defendant SEPTA from 2022 when Plaintiff was assigned to District 7 until February 18, 2026, as stated above where Plaintiff was subjected to racially motivated harassment and hostile work environment was violation of Title VII.

19

81.    As a direct and proximate result of the said discriminatory practices of Defendant SEPTA in violation of Title VII, Plaintiff has sustained loss of wages and earnings, loss of benefits, loss of future earning power, loss of back pay, as well as mental anguish, emotional distress, humiliation, and damage to reputation.

## COUNT SIX – TITLE VII VIOLATIONS – RETALIATION
### PLAINTIFF V. SEPTA

82.    Plaintiff incorporates by reference all allegations alleged in paragraphs 1 through 81 above as if the same were fully set forth at length herein.

83.    The acts and conduct of SEPTA from 2022 when Plaintiff was assigned to District 7 until February 18, 2026, as stated above where Plaintiff was subjected to adverse actions, including denial of overtime compensation, disciplinary write ups, retaliatory harassment and hostile work environment after Plaintiff engaged in protect activities were violations of Title VII.

84.    As a direct and proximate result of the said retaliatory practices of SEPTA, Plaintiff has sustained loss of wages and earnings, loss of benefits, loss of future earning power, loss of back pay, front pay, and interest due therein as well as mental anguish, emotional distress, humiliation, and damages to reputation.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully demands judgment against Defendants and request that this Honorable Court:

A.    Enter judgment against Defendants for back pay, front pay, loss of income, loss of benefits, pre and post judgment interests, costs of suit, compensatory damages, punitive damages against the individual Defendant Lt. Lachowitz, attorneys' fees and expert witness fees as permitted by law; and

B.    Award such other equitable relief, as the Court may deem necessary and just, including but not limited to an Order to make whole.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all questions of fact raised by this Amended Complaint.

Olugbenga O. Abiona, Esquire
Attorney ID # 57026
121 South Broad Street, Suite 1200
Philadelphia, PA 19107
(215) 625-0330
Attorney for Plaintiff

Dated: May 21, 2026

21



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## Philadelphia District Office

801 Market Street, Suite 1000
Philadelphia, PA 19107-3126
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
Philadelphia Direct Dial: (267) 589-9700
FAX (215) 440-2606, 2632, 2822 & 2604
Website: www.eeoc.gov

May 5, 2026

Jon Randolph
6522 Crescentville Road, 1
Philadelphia, PA 19120

Re:     Jon Randolph v. SEPTA
        EEOC Charge Number: 530-2025-05172

Dear Mr. Randolph,

The Commission has completed the investigation of the above referenced charge.

In your EEOC charge, you allege you were subjected to discrimination based on your race and religion when you were subjected to harassment. You further allege that you were subjected to retaliatory harassment due to your engagement in protected activity.

Based on our review and analysis of the information obtained, the EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes.

The EEOC has completed the administrative processing of your charge and is issuing you a Determination and Notice of Rights, which will allow you to pursue your claims further by filing a private lawsuit within ninety (90) days of receipt of the Notice.

Sincerely,

Sean Gallagher
Federal Investigator

CC:     Olugbenga Abiona
        Attorney at Law

EXHIBIT 1

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 2:22-CV-03004-KSM |
| | ) | |
| SOUTHEASTERN PENNSYLVANIA | ) | |
| TRANSPORTATION AUTHORITY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**<u>CONSENT DECREE</u>**

## I. INTRODUCTION

This action was brought by Plaintiff United States of America ("United States") against Defendant Southeastern Pennsylvania Transportation Authority ("SEPTA") to enforce the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*., as amended ("Title VII"), following receipt by the United States from the Equal Employment Opportunity Commission ("EEOC") of charges of discrimination filed by Jon Randolph ("Mr. Randolph"), Nathan D'Ettorre ("Mr. D'Ettorre"), and Anthony Lederer ("Mr. Lederer") against SEPTA. This Court has jurisdiction over this action under 42 U.S.C. § 2000e-5(f) and 28 U.S.C. § 1345.

1. The complaint filed by the United States alleges that SEPTA discriminated against Randolph, D'Ettorre, and Lederer (collectively, "Charging Parties") when it subjected them to: (1) a hostile work environment on the basis of race and religion, created by their supervisor Bryan McCauley ("McCauley"); and (2) retaliation in response to filing complaints of harassment against McCauley.

2. SEPTA denies it discriminated or retaliated against the Charging Parties in

violation of Title VII.

3.      Nevertheless, the United States and SEPTA (collectively, "Parties"), desiring that this action be settled by an appropriate Consent Decree ("Decree"), and to avoid the expenses, burdens and risks of protracted litigation, agree to the jurisdiction of this Court over the Parties and the subject matter of this action.  The Parties also agree that venue is proper in this district for the purposes of this Decree and proceedings related to this Decree only.  This Decree, being entered into with the consent of the United States and SEPTA, shall in no way constitute an adjudication or finding on the merits of the case.  The Parties further agree that all statutory conditions precedent to the institution of the lawsuit have been fulfilled.

## II.     FINDINGS

4.      Having examined the terms and provisions of this Decree, the Court finds the following:

(a)     The Court has jurisdiction over the subject matter of this action and the Parties to this action.

(b)     The terms and conditions of this Decree are fair, reasonable, and just, and the rights of the Parties are protected adequately by this Decree.

(c)     This Decree conforms with the Federal Rules of Civil Procedure and Title VII and is not in derogation of the rights and privileges of any person.

(d)     The entry of this Decree will further the objectives of Title VII and other applicable law, and will be in the best interests of the Parties.

In resolution of this action, the Parties hereby AGREE to, and the Court expressly APPROVES, ENTERS and ORDERS the following:

2

## III.   EQUITABLE RELIEF

5.      SEPTA, by and through its officials, agents, and employees, shall not engage in any act or practice that discriminates against any employee or applicant in violation of Title VII, including creating and maintaining a hostile work environment on the basis of race and religion.

6.      SEPTA, by and through its officials, agents, and employees, shall not engage in any act or practice that constitutes retaliation in violation of Title VII.  Any action that might deter a reasonable person from asserting rights protected by equal employment opportunity laws because that person has engaged in protected activity, such as opposing an unlawful employment practice or participating in an investigation into unlawful practices, constitutes retaliation. Opposition or participation may include, but are not limited to: filing a charge with the EEOC; making complaints to supervisors or SEPTA's internal investigation units; or testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under Title VII, this case, or this Decree.

*SEPTA Transit Police Department Anti-Discrimination and Anti-Retaliation Policies*

7.      Within sixty (60) days of the entry of this Decree, SEPTA shall submit to the United States, for review and approval, proposed written anti-discrimination and anti-retaliation policies—specific to its Transit Police Department—including its procedures for reporting employee complaints of discrimination and retaliation.  Such approval by the United States shall not be unreasonably withheld.

8.      The proposed SEPTA Transit Police Department ("STPD") policies shall comply with Title VII and shall include, at a minimum:

(a)     A clear statement that discrimination, including discrimination based on race and religion, is prohibited;

3

(b)     A clear statement that retaliation against a SEPTA employee for submitting a complaint of discrimination is prohibited.  Retaliation shall be defined as, at minimum, any action that might deter a reasonable person from asserting rights protected by equal employment opportunity laws because that person has engaged in protected activity under Title VII;

(c)     An appropriate description of what acts may constitute prohibited discrimination or retaliation, including a statement that discrimination or retaliation for protesting perceived discriminatory SEPTA policies, is prohibited;

(d)     A description of the complaint process, including the manner in which an employee may make a complaint of discrimination or retaliation and indicating that a complaint may be written or oral, and clear statement that complaints of discrimination or retaliation submitted by STPD employees will be promptly addressed;

(e)     The identification of the individuals authorized to accept complaints, including their contact information, which shall include an employee both within and outside the chain of command of the complaining STPD employee;

(f)     The identification of the individual(s), including their contact information, designated as responsible for investigating complaints of discrimination or retaliation submitted by STPD employees;

(g)     A description of the complaint investigation process, including the procedure for appropriate follow-up with a complaining employee with the investigation results and process to report further complaints;

(h)     The development and implementation of policies and procedures designed to

4

ensure a fair and independent process for investigating, making determinations, and implementing any related discipline for complaints of discrimination and retaliation in the SEPTA Police Department. At a minimum, such policies and procedures shall include:

    a. The involvement of SEPTA EEO in investigations, findings, and discipline determinations, regarding SEPTA Police Department complaints of discrimination or retaliation;

    b. Regarding only complaints of discrimination or retaliation, policies and procedures for the review of findings and recommendations of the Police Board of Inquiry ("PBI") or any other body tasked with making findings and recommendations, including a description of the process for documenting the reasons why any finding or recommendation made by the PBI or any other body tasked with making findings or recommendations is not followed;

    c. Regarding only complaints of discrimination or retaliation, such procedures will ensure, at a minimum, that the Police Chief, alone, shall not have the authority to modify PBI findings.

(i) A description of the appropriate discipline policies, procedures, and guidelines that are designed to promptly correct discrimination and retaliation;

(j) A requirement that any supervisor or manager who witnesses or learns of possible discrimination or retaliation must take prompt action to report and address the issue even if no complaint has been filed;

(k) A description of accountability measures, including any appropriate discipline, to

ensure that supervisors and managers implement the policies relating to reporting, investigating, preventing, and correcting instances of discrimination and retaliation;

(l)     Revision of STPD policies to encourage all employees who allege they are victims of discrimination or retaliation, whether supervisory or non-supervisory, to make a complaint without the threat of discipline;

(m)     Revision of STPD policies to encourage non-supervisory employees to immediately report any discrimination, after witnessing or learning of such discrimination, without the threat of discipline;

(n)     The review, revision, and implementation of SEPTA policies and procedures to prevent the re-hire of SEPTA police officers who have been discharged for discriminating, harassing, or retaliating against employees and/or citizens except when those SEPTA police officers have been reinstated and/or returned to work pursuant to a decision made from binding arbitration under the collective bargaining agreement between SEPTA and Fraternal Order of Transit Police;

      a.   Should an officer be reinstated pursuant to such binding arbitration, SEPTA shall take all reasonable and necessary steps available to prevent further discrimination, harassment, or retaliation by the reinstated employee; and

(o)     The review, revision, and implementation, as necessary, of STPD policies and procedures for placing employees on administrative duty or leave during the pendency of an investigation regarding discrimination, harassment, or retaliation.

9.     At the time SEPTA provides the written policies and procedures pursuant to

6

Paragraph 7, SEPTA will identify by job title and department, the person(s) within SEPTA, who will provide information to the Department of Justice concerning oversight of the newly implemented policies and who will be responsible for ensuring that SEPTA implements the relief required by the Consent Decree.

10. If the United States has any objection to SEPTA's submitted policies, the United States will so notify SEPTA in writing within thirty (30) days of receipt of the submitted policies. While the United States generally will not withhold its approval of the policies, absent good cause, such approval may be subject to suggested revisions to the submitted policies. Regarding any timely made objections by the United States, the Parties agree to make a good faith effort to confer regarding any disagreements concerning the submitted policies prior to initiating the dispute resolution provisions of Paragraph 33.

11. Within thirty (30) days from the date that either the United States has no further objections or the dispute resolution process in Paragraph 33 has concluded, SEPTA shall adopt and implement the finalized policies and disseminate the finalized policies among all of its employees, supervisors, officials, and human resources or EEO personnel involved in receiving or responding to complaints of discrimination or retaliation made by employees within the SEPTA Police Department, or otherwise providing oversight for enforcement of these policies within SEPTA. SEPTA shall publicize such policies and procedures by, among other things, posting them in its primary STPD headquarters located at 234 Market Street, 6th Floor and its various district headquarters, distributing them by email to all employees of the SEPTA Police Department and/or during roll call, and on any intranet website used for posting notices or policy changes for or concerning policies in effect for SEPTA, and distributing the policies to SEPTA's EEO staff. In addition, SEPTA shall ensure each new employee hired who works in or with the

STPD receives a copy of the approved policies at the time of the new employee's hire. SEPTA shall require all such employees, current and new, to acknowledge that he or she has read and understands such policies, and such acknowledgments shall be maintained in the employee's personnel file.

12. Within thirty (30) days of SEPTA's distribution of the discrimination and retaliation policies, SEPTA shall provide the United States written verification that SEPTA completed the distribution in the manner prescribed by Paragraph 11, above.

13. On the same day that the new policies are posted and disseminated to SEPTA employees, SEPTA's CEO and General Manager will also provide a written statement to the STPD employees discussing the importance of having a workplace free of discrimination, harassment, and retaliation. This statement will be made as a stand-alone statement and will not be made in conjunction with any other issues unrelated to the Consent Decree and new policies implemented as a result of the Consent Decree.

*Required Trainings*

14. Within ninety (90) days from the date SEPTA adopts the agreed to policies, SEPTA, at its own cost, shall provide SEPTA's Director of Human Resources, Human Resources Managers, EEO employees and managers, and any other STPD employee who is involved in receiving, investigating, or resolving complaints of discrimination and retaliation made by an employee within the SEPTA Transit Police Department, a mandatory, live (in person or virtually via the Internet), interactive training on prohibited employment practices under Title VII and on SEPTA's anti-discrimination and anti-retaliation policies as developed or revised under this Decree. This training shall be provided by an entity outside SEPTA. The training shall, at a minimum, include an explanation of those policies and the mechanism for reporting

8

complaints of discrimination, including retaliation, and shall train such employees in discrimination, harassment, and retaliation law and methodology for conducting investigations in these areas.  Training regarding SEPTA's policies may be given by a SEPTA employee.

15.     At least sixty (60) days before the mandatory training in Paragraph 1 is conducted, SEPTA shall submit to the United States, for review and approval, which approval shall not be unreasonably withheld, biographical information about the trainer(s) and the training materials to be used.  If the United States has any objection to SEPTA's proposed training program, including the materials or the proposed trainer(s), the United States will so notify SEPTA in writing within thirty (30) days of receipt of the proposed training program and materials.  While the United States generally will not withhold its approval of SEPTA's training materials, absent good cause, such approval may be subject to suggested revisions to the training materials.   Regarding any timely made objections by the United States, the Parties agree to make a good faith effort to confer regarding any disagreements concerning the training program, materials, or trainer(s) prior to initiating the dispute resolution provisions of Paragraph 33.

16.     Within sixty (60) days from the date SEPTA provides the training referenced in Paragraph 14, SEPTA, at its own cost, shall begin providing an annual, mandatory, live (in person or virtually via the Internet), interactive training on prohibited employment practices under Title VII, and on SEPTA's anti-discrimination and anti-retaliation policies as developed or revised under this Decree, to all STPD supervisory employees and managers, provided, however, that SEPTA may, on a limited case by case basis, provide training via duplicate video recording to accommodate staffing needs and special circumstances making live training infeasible or impractical (such as where a person is unavailable due to pre-scheduled leave or work travel). The first such annual training shall be provided, in part, by an entity outside SEPTA to include

9

information regarding discrimination, harassment, and retaliation law.  The training shall also include, at a minimum, an explanation of the policies and the mechanism for reporting complaints of discrimination or retaliation, including identification of the person(s) to whom complaints of discrimination may be submitted, and shall specifically discuss the responsibilities of supervisors to report and investigate discrimination complaints, including retaliation. Training regarding SEPTA's policies may be given by a SEPTA employee.

17.      At least sixty (60) days before the mandatory training in Paragraph 16 is conducted, SEPTA shall submit to the United States, for review and approval, which approval shall not be unreasonably withheld, the training materials to be used and identify, for review and approval, the person or persons who will provide the training and provide their credentials.  At the same time SEPTA provides its proposed training materials to the United States, it will identify by job title the person or persons within SEPTA's Department of Human Resources or other SEPTA department who will provide information concerning, and oversight of, the implementation of the training.  If the United States has any objection to SEPTA's proposed training program, including the materials or the proposed trainer(s), the United States will so notify SEPTA in writing within thirty (30) days of receipt of the proposed training program and materials.  While the United States generally will not withhold its approval of SEPTA's training materials, absent good cause, such approval may be subject to suggested revisions to the training materials.  Regarding any timely made objections by the United States, the Parties agree to make a good faith effort to confer regarding any disagreements concerning the training program, materials, or trainer(s) prior to initiating the dispute resolution provisions of Paragraph 33.

18.      Within thirty (30) days from the date SEPTA provides the training referenced in Paragraph 16,  SEPTA, at its own cost, shall begin providing an annual, mandatory, live (in

10

person or virtually via the Internet), interactive training on prohibited employment practices

under Title VII, and on SEPTA's anti-discrimination and anti-retaliation policies as developed or

revised under this Decree, to all SEPTA employees working in the SEPTA Police Department

(not already covered under Paragraphs 14 and 16), provided, however, that SEPTA may, on a

limited case by case basis, provide training via duplicate video recording to accommodate

staffing needs and special circumstances making live training infeasible or impractical (such as

where a person is unavailable due to pre-scheduled leave or work travel).  The first such annual

training shall be provided, in part, by an entity outside SEPTA to include information regarding

discrimination, harassment, and retaliation law.  The training shall, at a minimum, include an

explanation of those policies and the mechanism for reporting complaints of discrimination or

retaliation, including identification of the person(s) to whom complaints of discrimination may

be submitted.  Training regarding SEPTA's policies may be given by a SEPTA employee.

19.     At least sixty (60) days before the mandatory training in Paragraph 18 is

conducted, SEPTA shall submit to the United States, for review and approval, the training

materials to be used and identify, for review and approval, the person or persons who will

provide the training and provide their credentials.  At the same time SEPTA provides its

proposed training materials to the United States, it will identify by job title the person or persons

within SEPTA's Department of Human Resources or other SEPTA department who will provide

information concerning, and oversight of, the implementation of the training.  If the United

States has any objection to SEPTA's proposed training program, including the materials or the

proposed trainer(s), the United States will so notify SEPTA in writing within thirty (30) days of

receipt of the proposed training program and materials.  While the United States generally will

not withhold its approval of SEPTA's training materials, absent good cause, such approval may

11

be subject to suggested revisions to the training materials.  Regarding any timely made objections by the United States, the Parties agree to make a good faith effort to confer regarding any disagreements concerning the training program, materials, or trainer(s) prior to initiating the dispute resolution provisions of Paragraph 33.

20.     Within thirty  (30) days following the completion of the trainings required by Paragraphs 14 and 16, SEPTA shall provide the United States written verification that the trainings have been completed and that all SEPTA employees and personnel designated by SEPTA as being responsible for either receiving or investigating complaints of discrimination or retaliation attended such trainings.

21.     All persons who undergo the above-described mandatory training shall sign or register electronically an acknowledgment of attendance at the training.  SEPTA shall keep on file all signed/registered acknowledgments for the term of this Decree and make them available for review by the United States upon reasonable notice of at least five (5) business days.

22.     While the Decree remains in effect, SEPTA shall retain necessary records to implement this Decree.  SEPTA shall permit the United States to review compliance with this Decree at any time, upon reasonable notice of at least five (5) business days.

23.     While the Decree remains in effect, SEPTA will retain all records, including any papers, electronic files or writings of any kind, reports, studies, memoranda, letters, notes, charts, tables, rosters, manuals, guidelines, rules, lists, tabulations, press releases, books, articles, treatises, recordings or transcriptions of minutes, electronic files, machine readable format files, computer files, or audio or video recordings, electronic mail, and facsimiles, that come into its possession relating to:

(a)     Complaints or charges of discrimination or retaliation made by employees of the

12

SEPTA Police Department: (1) internally within SEPTA; (2) with the EEOC; or (3) through or with any other federal or state agency authorized to receive such complaints. The United States shall not publicly disclose any complaints or charges received under this Paragraph unless it is required for the enforcement of this Decree.

(b)     Any resulting investigation or disciplinary action taken related to the complaints referred to in Paragraph 23(a). This provision applies to any claims that arise from the effective date of this Decree through the term of this Decree as defined in Paragraph 39 of this Decree. SEPTA shall provide, when applicable: the name(s) and title(s) of individual(s) who conducted or are conducting the investigation; an estimate of when the investigation is expected to conclude; the steps taken during the investigation; name(s) of individual(s) interviewed; the findings of the investigation; the date the investigation was concluded; any corrective action or discipline given; and a description of SEPTA's efforts to ensure that the accountability measures for supervisors and managers implemented under Paragraph 8(k) are carried out.

(c)     SEPTA will provide copies of such records to the United States on a quarterly basis related to such complaints or charges, completion of any investigation taken related to such complaints or charges, findings related to such complaints or charges, and any disciplinary action taken related to such complaints or charges. The United States will have the right to request all documents related to such complaints or charges, or disciplinary action taken related to such complaints or charges, upon reasonable notice to SEPTA of not less than five (5) business days

13

without further order of this Court.

## IV.    INDIVIDUAL RELIEF FOR JON RANDOLPH

24.     While denying the allegations in the Complaint of the United States, and in settlement of the claims of the United States for relief on behalf of the Charging Parties, SEPTA agrees to provide Mr. Randolph the following individual relief as set forth in the paragraphs below.

25.     Within fourteen (14) days of the date of entry of this Decree: the United States shall send the proposed release in this matter attached as Appendix A ("Release") and a copy of this entered Decree to Mr. Randolph's counsel; and in settlement of the claims of the United States for relief on behalf of Mr. Randolph and in consideration of his signed Release, SEPTA shall pay Mr. Randolph within two weeks of receiving the signed Release, a total monetary award of $268,000, which represents compensatory damages. This amount shall be paid to Mr. Randolph in full without any withholdings taken out, and SEPTA shall issue Mr. Randolph an IRS Form 1099 and any other appropriate forms for that amount.

26.     Should Mr. Randolph require an official employment reference in the future, he must request the reference from either SEPTA's Director of Compensation/HRIS (a position currently held by David Schweibenz) or the Chief of SEPTA's Transit Police Department (a position currently held by Charles Lawson).  SEPTA's Director of Compensation/HRIS, and the Chief of SEPTA's Police Department shall not make any disparaging remarks about Mr. Randolph relating to the facts or claims giving rise to the United States' lawsuit, EEOC Charge Nos: 530-2020-00485, 530-2020-01951, or his individual lawsuit currently pending against SEPTA (Case No. 21-CV-04005-KSM).  SEPTA shall not provide any documents related to any facts underlying the allegations in the United States complaint, and shall not refer in any way to

14

the United States' filing of this lawsuit or to Mr. Randolph's filing of an internal complaint, EEOC charges, or his individual case (Case No. 21-CV-04005-KSM) against SEPTA when communicating with a potential employer.

## V.      INDIVIDUAL RELIEF FOR NATHAN D'ETTORRE

27.      While denying the allegations in the Complaint of the United States, and in settlement of the claims of the United States for relief on behalf of the Charging Parties, SEPTA agrees to provide Mr. D'Ettorre the following individual relief as set forth in the paragraphs below.

28.      Within fourteen (14) days of the date of entry of this Decree: the United States shall send the proposed release in this matter attached as Appendix B ("Release") and a copy of this entered Decree to Mr. D'Ettorre; and in settlement of the claims of the United States for relief on behalf of Mr. D'Ettorre and in consideration of his signed Release, SEPTA shall pay Mr. D'Ettorre within two weeks of receiving the Release, a total monetary award of $105,000, which represents compensatory damages. This amount shall be paid to Mr. D'Ettorre in full without any withholdings taken out, and SEPTA shall issue Mr. D'Ettorre an IRS Form 1099 and any other appropriate forms for that amount.  Upon receipt by SEPTA of the executed Release by Mr. D'Ettorre, SEPTA shall pay the required amounts by check made payable to "Mr. Nathan D'Ettorre" and sent to the following address:

> Mr. Nathan D'Ettorre
> [ADDRESS REDACTED]

Within ten (10) days of SEPTA's sending payment to Mr. D'Ettorre, SEPTA shall provide documentary evidence of having paid him by sending the United States a photocopy of the check.

29.     Should Mr. D'Ettorre require an official employment reference in the future, he must request the reference from either SEPTA's Director of Compensation/HRIS (a position currently held by David Schweibenz) or the Chief of SEPTA's Transit Police Department (a position currently held by Charles Lawson). The STPD shall then provide neutral employment references for Mr. D'Ettorre that state only his dates of employment, his last job title, and his wage/income history, when communicating with prospective employers or any third party seeking a reference for him.  Within fifteen (15) days of receipt by SEPTA of Mr. D'Ettorre's Release (Appendix B), STPD shall provide Mr. D'Ettorre a letter of reference on SEPTA letterhead for his personal use that contains this same information.  SEPTA's Director of Compensation/HRIS, and the Chief of SEPTA's Police Department shall not provide any negative employment reference for Mr. D'Ettorre and shall not make any disparaging remarks about Mr. D'Ettorre.  SEPTA shall not provide to any prospective employer any documents related to any facts underlying the allegations in the United States complaint or EEOC Charge No. 530-2020-00484, and shall not refer in any way to the United States' filing of this lawsuit or to Mr. D'Ettorre's filing of an internal complaint or EEOC charge against SEPTA when communicating with a potential employer.

## VI.     INDIVIDUAL RELIEF FOR ANTHONY LEDERER

30.     While denying the allegations in the Complaint of the United States, and in settlement of the claims of the United States for relief on behalf of the Charging Parties, SEPTA agrees to provide Mr. Lederer the following individual relief as set forth in the paragraphs below.

31.     Within fourteen (14) days of the date of entry of this Decree: the United States shall send the proposed release in this matter attached as Appendix C ("Release") and a copy of this entered Decree to Mr. Lederer; and in settlement of the claims of the United States for relief

on behalf of Mr. Lederer and in consideration of his signed Release, SEPTA shall pay Mr.

Lederer within two weeks of receiving the Release, a total monetary award of $105,000, which

represents compensatory damages. This amount shall be paid to Mr. Lederer in full without any

withholdings taken out, and SEPTA shall issue Mr. Lederer an IRS Form 1099 and any other

appropriate forms for that amount.  Upon receipt of the executed Release by Mr. Lederer,

SEPTA shall pay the required amounts by check made payable to "Mr. Anthony Lederer" and

sent to the following address:

> Mr. Anthony Lederer
> [ADDRESS REDACTED]

Within ten (10) days of SEPTA's sending payment to Mr. Lederer, SEPTA shall provide

documentary evidence of having paid him by sending the United States a photocopy of the

check.

32.     Should Mr. Lederer require an official employment reference in the future, he

must request the reference from either SEPTA's Director of Compensation/HRIS (a position

currently held by David Schweibenz) or the Chief of SEPTA's Transit Police Department (a

position currently held by Charles Lawson).  STPD shall then provide neutral employment

references for Mr. Lederer that state only his dates of employment, his last job title, and his

wage/income history, when communicating with prospective employers or any third party

seeking a reference for him.  Within fifteen (15) days of the executed Release by Mr. Lederer,

STPD shall provide Mr. Lederer a letter of reference on SEPTA letterhead for his personal use

that contains this same information.  SEPTA's Director of Compensation/HRIS, and the Chief of

SEPTA's Police Department shall not provide any negative employment reference for Mr.

Lederer and shall not make any disparaging remarks about Mr. Lederer.  SEPTA shall not

17

provide to any prospective employer any documents related to any facts underlying the allegations in the United States complaint or EEOC Charge No. 530-2020-00487, and shall not refer in any way to the United States' filing of this lawsuit or to Mr. Lederer's filing of an internal complaint, or an EEOC charge against SEPTA when communicating with a potential employer.

## VII.    DISPUTE RESOLUTION

33.    The Parties shall attempt to resolve informally any disputes that may arise under this Decree.  The Parties shall engage in good faith efforts to resolve the issue before seeking action by the Court.  If the United States and SEPTA are unable to reach agreement after informally seeking to resolve a dispute, the issue may be submitted by either party to the Court for resolution upon at least thirty (30) days' written notice to the other party.

## VIII.  CONTACTS FOR THE PARTIES

34.    To the extent possible, all documents required to be delivered to the Parties and/or to the Charging Parties under this Decree shall be sent via electronic mail.

35.    Where such electronic delivery is not possible, all documents required to be delivered under this Decree to the United States shall be sent via overnight delivery to the following address:

> Lori B. Kisch, Special Litigation Counsel
> Young Choi, Trial Attorney
> Employment Litigation Section
> Civil Rights Division
> U.S. Department of Justice
> 4 Constitution Square
> 150 M Street, NE, Room 9.505
> Washington, D.C. 20002
> Lori.Kisch@usdoj.gov
> Young.Choi@usdoj.gov

18

36.     Where such electronic delivery is not possible, all documents required to be delivered under this Decree to SEPTA shall be sent to the following address:

> Daniel J. McGravey, Esquire
> Amy Lachowicz, Esquire
> Clark Hill
> Two Commerce Square
> 2001 Market Street, Suite 2620
> Philadelphia, PA 19103
> DMcgravey@ClarkHill.com
> ALachowicz@clarkhill.com

37.     Where such electronic delivery is not possible, all documents required to be delivered under this Decree to Mr. Randolph shall be sent to the following address:

> Mr. Jon Randolph
> c/o Olugbenga Abiona, Esquire
> Abiona Law, PLLC
> P.O. Box 3326
> Cherry Hill, NJ 08034
> Oluesq@aol.com

38.     Either the United States, SEPTA, or Mr. Randolph may update physical or electronic mailing addresses without requiring any changes to the Consent Decree.

## IX.     JURISDICTION OF THE COURT

39.     The Court shall retain jurisdiction over this Decree for the purpose of resolving any disputes or entering any orders that may be necessary to implement the relief provided in the Decree.  At the end of four (4) years from the date of entry of this Decree, without further order of the Court, this Decree shall be automatically dissolved, and this action shall be dismissed with prejudice.

40.     The time limits set forth throughout this Decree for providing any information required by this Decree may be expanded upon mutual consent of the Parties or upon order of the Court following written notice to the other party and the opportunity for the other party to

respond.

## X.     GENERAL PROVISIONS

41.     The Parties shall bear their own costs, expenses, and attorney's fees in this action.

42.     If any provision of this Decree is found to be unlawful, only the specific provision in question will be affected and the other provisions will remain in full force and effect.

43.     This Decree may be executed in multiple counterparts, each of which together shall be considered an original but all of which shall constitute one Decree. The Parties agree to be bound by electronic and facsimile signatures.


It is so ORDERED, this _____ day of _____, 2022.


_____
UNITED STATES DISTRICT JUDGE

AGREED AND CONSENTED TO:

For Plaintiff United States of America:

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

By:

KAREN D. WOODARD (MD Bar [no number issued])
Chief

_____*/s/ Lori Kisch*_____
LORI B. KISCH (DC Bar No. 491282)
Special Litigation Counsel
YOUNG CHOI (CA Bar No. 327027)
Trial Attorney
U.S. Department of Justice
Employment Litigation Section, Civil Rights Division
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

Telephone: (202) 305-0942
Email: Lori.Kisch@usdoj.gov, Young.Choi@usdoj.gov

For Defendant Southeastern Pennsylvania Transportation Authority:


_____/s/ Daniel McGravey_____
DANIEL J. MCGRAVEY (PA Bar ID No. 83176)
AMY C. LACHOWICZ (PA Bar ID No. 92192)
Clark Hill PLC
Two Commerce Square
2001 Market Street, Suite 2620
Philadelphia, PA 19103
Email: Dmcgravey@clarkhill.com, Alachowicz@clarkhill.com

# APPENDIX A

# RELEASE

I, Jon Randolph, for and in consideration of accepting the relief to be provided to me under the provisions of the Consent Decree entered in <u>United States v. Southeastern Pennsylvania Transportation Authority</u> (E.D. Pennsylvania), hereby release and discharge the Southeastern Pennsylvania Transportation Authority ("SEPTA"), and its current, former, and future officials, employees and agents from all legal and equitable claims which have been or could have been asserted by the United States in its complaint filed in that court case and the charge of discrimination that I filed with the Equal Employment Opportunity Commission (Charge Nos. 530-2020-00485, 530-2020-01951).

I understand that the relief to be given to me does not constitute an admission by SEPTA of the validity of any claim raised by me, or on my behalf.

This Release and any other Release that I may execute to terminate the cause of action in the United States District Court for the Eastern District of Pennsylvania captioned as Jon L. Randolph v. SEPTA, et al., Civil Action No. 21-cv-04005, constitute the entire agreement between SEPTA and myself in connection with this case, without exception or exclusion. Any additional release I may enter into beyond this release, will not in any way limit the relief I will receive under this Consent Decree.

I hereby acknowledge that I was provided a copy of the Consent Decree in this action and had an opportunity to consult with my private attorney about the terms of the Decree.

I HAVE READ THIS RELEASE AND UNDERSTAND THE CONTENTS THEREOF, AND I EXECUTE THIS RELEASE OF MY OWN FREE ACT AND DEED.

Signed this __ day of _____, 2022.


_____
                Jon Randolph

22

# APPENDIX B

# RELEASE

I, Nathan D'Ettorre, for and in consideration of accepting the relief to be provided to me under the provisions of the Consent Decree entered in <u>United States v. Southeastern Pennsylvania Transportation Authority</u> (E.D. Pennsylvania), hereby release and discharge the Southeastern Pennsylvania Transportation Authority ("SEPTA"), and its current, former, and future officials, employees and agents from all legal and equitable claims which have been or could have been asserted by the United States in its complaint filed in that court case and the charge of discrimination that I filed with the Equal Employment Opportunity Commission (Charge No. 530-2020-00484).

I understand that the relief to be given to me does not constitute an admission by SEPTA of the validity of any claim raised by me, or on my behalf.

This Release and any other Release that I may execute with SEPTA related to my employment with SEPTA constitute the entire agreement between SEPTA and myself in connection with this case, without exception or exclusion.  Any additional release I may enter into beyond this release, will not in any way limit the relief I will receive under this Consent Decree.

I hereby acknowledge that I was provided a copy of the Consent Decree in this action and reviewed the terms of the Decree.

I HAVE READ THIS RELEASE AND UNDERSTAND THE CONTENTS THEREOF, AND I EXECUTE THIS RELEASE OF MY OWN FREE ACT AND DEED.

Signed this __ day of _____, 2022.


_____
Nathan D'Ettorre

23

# APPENDIX C

# RELEASE

I, Anthony Lederer, for and in consideration of accepting the relief to be provided to me under the provisions of the Consent Decree entered in <u>United States v. Southeastern Pennsylvania Transportation Authority</u> (E.D. Pennsylvania), hereby release and discharge the Southeastern Pennsylvania Transportation Authority ("SEPTA"), and its current, former, and future officials, employees and agents from all legal and equitable claims which have been or could have been asserted by the United States in its complaint filed in that court case and the charge of discrimination that I filed with the Equal Employment Opportunity Commission (Charge No. 530-2020-00487).

I understand that the relief to be given to me does not constitute an admission by SEPTA of the validity of any claim raised by me, or on my behalf.

This Release and any other Release that I may execute with SEPTA related to my employment with SEPTA constitute the entire agreement between SEPTA and myself in connection with this case, without exception or exclusion. Any additional release I may enter into beyond this release, will not in any way limit the relief I will receive under this Consent Decree.

I hereby acknowledge that I was provided a copy of the Consent Decree in this action and reviewed the terms of the Decree.

I HAVE READ THIS RELEASE AND UNDERSTAND THE CONTENTS THEREOF, AND I EXECUTE THIS RELEASE OF MY OWN FREE ACT AND DEED.

Signed this __ day of _____, 2022.


_____
Anthony Lederer


24

**EXHIBIT 2**

## DISTRICT 7B TOUR                                    7/18/23  >

Lt. Lachowitz: **Nestel** was found guilty and Jon claimed the 15th and Hunting Park throne



**Lt. Lachowitz** >

IMG_2266.HEIC
Image · 4 MB

And even when engine is on , it says engine isn't on

Absolutely you can

Thnx sarge , as soon as dealership opens imma either see if I can make it there or if roadside can tow me there

That's the ghost of Nestel

**Lt. Lachowitz**                                          2/22/24

> You can't catch a break with that Tommy **Nestel** car   >

**Lt. Lachowitz**                                          1/5/24

> That's the ghost of **Nestel**   >



**Lt. Lachowitz**

The ghost of Nestel past rides shotgun

10:01 AM

Lt. Lachowitz ›

Feb 22, 2024 at 6:35 PM



Sarge , can I use a vacay tomorrow ? I'm assed out

Yeah that should be fine

Thank u sarge.. I can't catch a damn break

You can't catch a break with that Tommy Nestel car

iMessage









12:48 🔕                                    .ıll 5G 57

**DISTRICT 7B TOUR**
Bouazza Work #(ignore), Gil,...

❤️

**Lt. Lachowitz**
On your way to Nestel's house for
Thanksgiving leftovers?                9:35 AM

😂 ❤️ 4